Holly Pranger (SB# 215270)
Vijay K. Toke (SB#215079)
Peter G. Byrne (SB# 318006)
Nikolaus A. Woloszczuk (SB# 286633)
PRANGER LAW PC
88 Guy Place, Suite 405
San Francisco, CA 94105
Tel: 415-885-9800 | Fax: 415-944-1110
hpranger@prangerlaw.com
vtoke@prangerlaw.com
pbyrne@prangerlaw.com
nwoloszczuk@prangerlaw.com

Attorneys for Plaintiff,
INDUS AI TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDUS AI TECHNOLOGIES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PROSPEROUS COMMERCE INC., a Delaware corporation<br><br>Defendant. | Case No.<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

# COMPLAINT

Plaintiff Indus AI Technologies, Inc. for its Complaint against Defendant Prosperous Commerce Inc. alleges as follows:

## THE PARTIES

1. Plaintiff Indus AI Technologies, Inc. ("Maxima") is a California corporation with a principal office at 107 S B Street, STE 220 San Mateo, CA 94401. Plaintiff does business under the trademark and trade name, Maxima.

2. On information and belief, defendant Prosperous Commerce Inc. ("Maximor AI") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1755 Broadway Front 3 #1104, New York, NY 10019. Defendant does business under the trademark and trade name, Maximor AI.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act); 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks); 28 U.S.C. § 1332(a)(2) (because the parties have diverse or foreign citizenship, and the amount in controversy exceeds $75,000), and 28 U.S.C. § 1367 (supplemental jurisdiction).

4. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant conducts business throughout the United States and has listed multiple customers that are located in California on their website (including without limitation a customer located in this judicial district), Defendant's infringing goods and services complained of herein are offered within this judicial district, and Defendant has caused injury to Maxima within this judicial district.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, Defendant regularly transacts business within this judicial district, has listed at least one customer located within this judicial district on its website, and Defendant's activities cause harm to Maxima in this judicial district. The Lanham Act provides that venue lies in the place of harm to the Plaintiff.

### INTRADISTRICT ASSIGNMENT

6. For purposes of intradistrict assignment pursuant to Civil Local Rules 3-2(c) and 3-5(b), intellectual property actions are assigned on a district-wide basis.

### GENERAL ALLEGATIONS

7. Maxima brings this action to stop Defendant's infringement of Maxima's MAXIMA trademarks, which include the trademarks MAXIMA and MAXIMA (and Design) (collectively, the "MAXIMA Marks"). Defendant has used and uses the MAXIMOR mark as a trademark for its goods and services, which are similar to Maxima's goods and services, including in this judicial district. Defendant's use of the MAXIMOR mark, including in this judicial district, has caused and, if allowed to continue, will continue to cause confusion and harm to Maxima.

**Maxima's Business**

8. Maxima offers business-to-business (B2B) accounting software powered by artificial intelligence (AI) that allows its customers to close their books faster and more accurately. Maxima's software automates traditionally manual record to report operations by automatically tracking and reconciling an organization's transactions across multiple data sources, detecting and summarizing anomalies, and providing audit trails to back its work.

9. Maxima has offered its software under the MAXIMA Marks, including in this judicial district, since at least as early as October of 2024. Maxima has spent a substantial amount of time, money, and resources to promote, advertise, and protect its MAXIMA Marks and has developed extremely valuable goodwill in its marks.

10. Plaintiff also promotes its MAXIMA Marks in various channels of trade, from sales teams deployed to sell MAXIMA-branded software subscriptions to businesses, to sponsorships and online promotion, and through attendance at trade shows and conferences. For example, Maxima attended the 2024 Suiteworld conference held in Las Vegas, Nevada and demonstrated its product to numerous prospective clients.

11. Plaintiff further promotes and advertises its business under its MAXIMA Marks on social media platforms, such as LinkedIn.

12. Maxima has been recognized for its leading role in the rapidly-growing enterprise AI space. For example, Maxima was recently named to Redpoint Ventures' AI64 list, recognizing breakthrough companies shaping enterprise AI, for its work in redefining enterprise accounting operations.

13. Given its strong reception in the industry and early commercial success, Plaintiff's MAXIMA Marks have garnered significant goodwill and commercial value throughout the United States since its launch.

**Maxima's Trademark Rights**

14. Maxima began using its MAXIMA Marks throughout the United States, including in this judicial district, at least as early as October of 2024, which was prior to Defendant's adoption

and use of its infringing MAXIMOR mark for Defendant's highly similar goods and services. As such, Maxima owns common law rights in its MAXIMOR Marks for these goods and services.

15. In addition, Maxima owns a federal trademark application, U.S. Serial No. 99/097,803, for its MAXIMA trademark (the "MAXIMA Application").[1] The MAXIMA Application was filed on March 21, 2025 and approved for publication by the United States Patent and Trademark Office and was published for opposition on November 4, 2025. As shown in the USPTO Trademark Snapshot of Application at Publication for Opposition dated October 1, 2025, a true and correct copy of which is attached hereto as **Exhibit A**, the MAXIMA Application covers the following goods and services in International Classes 09 and 42:

- Class 9: Downloadable software for automating, managing, and recording accounting processes for use in the field of finance; Downloadable software for automating, managing, and recording accounting processes for use in financial close and consolidation; Downloadable software for automating, managing, and recording accounting processes for use in Record to Report management

- Class 42: Software as a service (SAAS) services featuring software for automating, managing, and recording accounting processes for use in the field of finance; Software as a service (SAAS) services featuring software for automating, managing, and recording accounting processes for use in financial close and consolidation; Software as a service (SAAS) services featuring software for automating, managing, and recording accounting processes for use in Record to Report management

---

[1] The MAXIMA Application was filed in the name of Indus AI, Inc. Maxima subsequently changed its business name to its current name, Indus AI Technologies, Inc. The name change was submitted to the United States Patent and Trademark Office on October 2, 2025 and is awaiting processing.

16. As a result of Maxima's continuous use of its MAXIMA Marks and its common law rights in those marks, and its expenditures, efforts, and accomplishments in the AI enterprise accounting software industry, the MAXIMA Marks have come to signify the high quality of Maxima's services. The MAXIMA Marks therefore have an incalculable reputation and goodwill, belonging exclusively to Maxima.

**Defendant's Business**

17. Upon information and belief, Defendant offers AI-powered accounting software under the MAXIMOR trademark (the "MAXIMOR Mark" or the "Infringing Mark"). Upon information and belief, Defendant markets, offers, and sells its MAXIMOR products and services in this District and targets consumers within this District.

18. Upon information and belief, Defendant offers AI-powered B2B software that aims to automate accounting processes that were traditionally manual in nature. Defendant promotes its software as "automat[ing] revenue, cash, close, and reporting processes with built-in audit trails—delivering outputs CFOs trust to free teams for strategic impact, reduce risk, and unlock visibility across systems." See **Exhibit B**. Further, Defendant advertises its "Automated Close" function that allows customers to "Close books in days, not weeks." See **Id.**

19. Upon information and belief, Defendant markets its MAXIMOR goods and services through similar trade channels, such as online and via paid sponsorships, through a sales team, and at conferences, conventions, and trade shows.

20. For example, as illustrated in the below graphic from a LinkedIn post dated October 16, 2025 by the founder of the Operators Guild conference, Defendant presented its product at the same 2025 Operators Guild conference where Plaintiff showcased its software. See **Exhibit C**.



21. Upon information and belief, Defendant began offering its accounting software under the MAXIMOR Mark in or around January of 2025, months after Plaintiff's first adoption of its MAXIMA Marks.

22. Given that both parties offer enterprise AI software used to automate the accounting close process, Maximor is a direct competitor of Maxima.

23. For example, a Principal at QED Investors, a global venture capital firm, included the below graphic in a LinkedIn post dated November 3, 2025 on the topic of leading AI software companies in the finance space. *See* **Exhibit D**. Maxima and Maximor are included among six leading companies in the "Close Software" category.



**Defendant's Wrongful Use of the MAXIMOR Mark**

24. Defendant's Infringing Mark is confusingly similar to Plaintiff's MAXIMA Marks.

25. Additionally, both Plaintiff's and Defendant's goods and services are highly similar and/or virtually identical in certain aspects.

26. Upon information and belief, Defendant's services are offered through similar channels of trade as Maxima's products and services and to the same or similar target consumers, including in this judicial district.

27. On information and belief, Defendant first adopted its Infringing Mark to promote its goods and services, in or around January of 2025, months after Plaintiff adopted its MAXIMA Marks.

28. Taking all the facts alleged together, there is a likelihood of confusion as to source, affiliation, and sponsorship between the parties' respective marks and goods and services. Accordingly, Defendant's MAXIMOR Mark infringes on Plaintiff's MAXIMA Marks.

29. Defendant's use of the Infringing Mark has therefore caused and will continue to cause confusion, mistake, or deception as to the origin, source, and sponsorship of Defendant's goods and services.

30. Defendant's conduct will continue unless restrained by the Court, and Maxima has and will suffer irreparable harm, including through loss of goodwill, reputation, market share, and revenue.

31. Maxima has no adequate remedy at law for the irreparable harm that it is likely to suffer as a result of Defendant's use of the Infringing Mark.

## FIRST CLAIM FOR RELIEF

**Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a)**

32. Maxima repeats and realleges each allegation set forth in paragraphs 1 through 32 above as if fully set forth herein.

33. The acts of Defendant described above constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

34. Maxima has valid and protectable rights in the MAXIMA Marks that predate Defendant's use of the Infringing Mark. Further, on information and belief, Defendant does not own any trademark applications or registrations for the Infringing Mark.

COMPLAINT

35. Defendant's unauthorized use of the Infringing Mark as alleged above has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Defendant and Maxima or, as to the origin, sponsorship, or approval of Maxima's or Defendant's goods, services, or commercial activities, in violation of 15 U.S.C. § 1125(a).

36. As a direct and proximate result of Defendant's wrongful conduct, Maxima has been, is now, and will be irreparably injured and damaged by Defendant's aforementioned acts, and unless Defendant is enjoined by this Court, Maxima will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Maxima has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Common Law Trademark Infringement

37. Maxima repeats and realleges each allegation set forth in paragraphs 1 to 37 above as if fully set forth herein.

38. The acts of Defendant as described above constitute trademark infringement under federal common law.

39. Maxima has valid and protectable rights in its MAXIMA Marks, including in the State of California, dating from its first use in commerce, at least as early as October of 2024. These rights predate Defendant's use of the Infringing Mark in the United States and the State of California, which, on information and belief, did not begin until January of 2025.

40. Defendant's unauthorized use of the Infringing Mark as alleged above has caused and is likely to cause consumers to believe that there is a relationship between Defendant and Maxima or

that Defendant's goods and services are associated with or come from Defendant, and such association constitutes common law trademark infringement.

41. As a direct and proximate result of Defendant's wrongful conduct, Maxima has been, is now, and will be irreparably injured and damaged by Defendant's aforementioned acts, and unless Defendant is enjoined by the Court, Maxima will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Maxima has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

**Unfair Competition – California Bus. & Prof. Code §§ 17200 et seq.**

42. Maxima repeats and realleges each allegation set forth in paragraphs 1 to 42 above as if fully set forth herein.

43. Defendant's conduct, described above, constitutes unlawful, unfair, or fraudulent business acts or practices in the course of business, trade, or in commerce, and as such constitutes unfair competition under California Business & Professions Code §§ 17200 et seq.

44. Defendant's conduct constitutes unlawful business acts or practices in that Defendant has engaged in false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and under federal common law on trademark infringement.

45. Defendant's conduct constitutes fraudulent business acts or practices in that Defendant's false designation of origin, and unfair competition are likely to mislead or deceive, and have in fact misled and deceived.

46. As a direct and proximate result of Defendant's wrongful conduct, Maxima has been, is now, and will be irreparably injured and damaged by Defendant's aforementioned acts, and unless

Defendant is enjoined by the Court, Maxima will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Maxima has no adequate remedy at law.

47. Defendant should be required to restore to Maxima any and all profits earned as a result of its unlawful or fraudulent business acts or practices, or provide Maxima with any other restitution as the Court deems appropriate.

### PRAYER FOR RELIEF

**WHEREFORE**, Maxima prays for the following relief:

A. That judgment be entered in favor of Maxima and against Defendant on each and every Claim for Relief of this Complaint;

B. For entry of an order and judgment requiring that Defendant and its officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be enjoined during the pendency of this action and permanently thereafter from: (a) using in any manner the Infringing Mark, any other MAXIM-formative trademarks, or any other mark or name that is confusingly similar to or a colorable imitation of the MAXIMA Marks owned by Maxima; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of the members of the public or prospective customers as to the source of the products offered or distributed by Defendant, or likely to confuse members of the public or prospective customers into believing that there is some connection between Maxima and Defendant or any other entity owned by or associated with Defendant; (c) otherwise competing unfairly with Maxima in any manner; or (d) assisting, aiding, or abetting any other person or

business entity in engaging in or performing any of the activities referred to in parts (a) through (c) of this paragraph B;

C.     For entry of an order and judgment directing Defendant, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Maxima within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction and ceased all offering of goods and services under the Infringing Mark, as set forth above;

D.     For entry of an order and judgment directing Defendant, pursuant to 15 U.S.C. § 1118, to deliver up for destruction, or to show proof of said destruction or sufficient modification to eliminate the infringing matter, all catalogs, articles, products, displays, labels, circulars, letterhead, business cards, promotional items, clothing, literature, or other matter in the possession, custody, or under the control of Defendant or its agents bearing the Infringing Mark, or any other mark that is confusingly similar to the MAXIMA Mark;

E.     For a judgment in the aggregate amount of (a) Defendant's profits, (b) Maxima's actual damages, (c) the costs of this action pursuant to 15 U.S.C. § 1117, and (d) restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of its unlawful and/or fraudulent business acts or practices; and

H.     That the Court grant such other and further relief as it deems just and proper.

## JURY DEMAND

Maxima hereby demands a jury trial on all issues and claims so triable.

Dated: November 7, 2025

/s/Holly Pranger
Holly Pranger
Vijay K. Toke
Peter G. Byrne
Nikolaus A. Woloszczuk
Pranger Law PC
Attorneys for Plaintiff
INDUS AI TECHNOLOGIES, INC.